**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**GENERAL JURISDICTION DIVISION**

**CASE NO. 2018-006588-CA-01**

BRUCE POWERS
        Plaintiff,
v.

CITY OF MIAMI, a municipality, and
ALEJANDRO MACIAS, individually
and in his official capacity as former police
officer for the City of Miami Police Department.

        Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff sues Defendants, jointly and severally, and alleges as follows:

1.      This is an action for money damages in excess of fifteen thousand ($15,000.00) dollars, arising out of one or more violations of State and Federal laws as detailed below.

## JURISDICTION AND VENUE

2.      This action for damages is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and the tort law of the State of Florida, against the CITY OF MIAMI and ALEJANDRO MACIAS, the former individual City of Miami police officer.

1

EXHIBIT B

3.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §1988 and the constitutional provisions mentioned above and under the tort law of Florida.

4.     Venue is proper because the events complained of occurred in Miami, Florida.

5.     All conditions precedent to the filing of this action have been performed or have occurred prior to its institution including those set forth in Florida Statutes Chapter 768.

## PARTIES

6.     Plaintiff BRUCE POWERS, (hereinafter "POWERS" or "Plaintiff") was at all times relevant to this complaint a citizen of the United States and a resident of Miami-Dade County, Florida. The Plaintiff resided on a vessel moored near the Miami Yacht Club.

7.     Defendant CITY OF MIAMI (hereinafter "CITY OF MIAMI" or "Defendant CITY") is a municipality of the State of Florida and is organized pursuant to the laws of Florida.

8.     Defendant ALEJANDRO MACIAS (hereinafter "MACIAS" or "Defendant MACIAS") was at all times relevant to this complaint a duly appointed police officer of the City of Miami Police Department.

9.     At all material times, Defendant MACIAS was acting under color of state law and under color of his authority as a police officer for the Defendant CITY OF MIAMI and Defendant MACIAS had been assigned to the Miami Police Marine Patrol at the time of the events describe below.

10.     At all times, Defendant MACIAS was engaged in conduct that was the proximate cause of the violations of the Plaintiff's federally protected rights, as more particularized herein. Defendant Macias is being sued as a former police officer for the CITY OF MIAMI, and his official capacity and in his individual capacity.

2

## STATEMENT OF FACTS

11.     On April 21, 2016, Plaintiff drove his pickup truck onto the premises of the Miami Yacht Club. POWERS held a membership in the Miami Yacht Club. As he entered the Miami Yacht Club driveway, he noticed Defendant MACIAS in the area of the Miami Police Marine Patrol compound where boats are stored.

12.     The Miami Police Marine Patrol office is located on the premises of the Miami Yacht Club, and Defendant MACIAS appeared to be on duty that day in uniform.

13.     As the Plaintiff drove slowly passed the Miami Police Marine Patrol compound and headed toward the Miami Yacht Club building, the Plaintiff noticed Defendant MACIAS following him on foot. Plaintiff stopped his pickup truck as MACIAS walked towards the Plaintiff on the driver's side door. The driver's side window was down. As he approached the truck, MACIAS raised his voice and began yelling at the Plaintiff because complaints were made by Yacht Club members about MACIAS's personal boat. The Plaintiff had observed Defendant MACIAS in the boatyard compound.

14.     Defendant MACIAS wanted the Plaintiff to exit his truck. The Plaintiff refused to leave his truck. At one point MACIAS extended his arm into the open window and struck the Plaintiff in the face causing his nose to bleed.

15.     Stunned by MACIAS's sudden and violent attack, the Plaintiff drove away and headed to the Yacht Club office to report the incident. Defendant MACIAS followed the Plaintiff to the Yacht Club office.

16.     When the Plaintiff entered the patio of the Yacht' Club, the Plaintiff attempted to report the actions of MACIAS to the management of the Miami Yacht Club and/or the Miami Police Department. As the Plaintiff was attempting to report the battery by MACIAS, Defendant

MACIAS caught up with the Plaintiff in the patio area where Defendant MACIAS tackled the Plaintiff, battered him and arrested the Plaintiff without any probable cause.

17.     Miami Fire and Rescue arrived at the scene soon after to treat the Plaintiff's bloodied nose caused by the Defendant MACIAS.

18.     After handcuffing and detaining the Plaintiff, Defendant MACIAS caused the Plaintiff to be detained at the Miami Police Marine station located in the Miami Yacht Club. Defendant MACIAS provided false information to another Miami Police officer to justify his arrest of the Plaintiff. That officer used MACIAS's false information for a sworn arrest affidavit falsely charging the Plaintiff with battery on a police officer, a third degree felony, in violation of Florida Statutes §784.07(2)(B) and with resisting arrest without violence and resisting an officer without violence, a misdemeanor, in violation of Florida Statutes §843.02.

19.     The Plaintiff was booked on these false charges and jailed in the Miami-Dade jail facility until bond was posted for him.

20.     On or about April 28, 2016, Defendant MACIAS provided false information to the Miami Dade State Attorney to support the false charges. As a result of MACIAS's false information, the Miami Dade State Attorney charged the Plaintiff with resisting an officer without violence (*State of Florida v. Bruce Michael Powers*, case no. M16-15536). Plaintiff POWERS had to retain and pay counsel to defend against these false charges.

21.     On or about June 29, 2016, the Plaintiff entered a not guilty plea before a Miami Dade County Court Judge.

22.     On or about November 3, 2016, Defendant MACIAS was served with a subpoena to appear for his deposition by POWERS's criminal defense attorney, but Defendant MACIAS failed to appear for his deposition scheduled for November 10, 2016. After the Plaintiff's

criminal defense attorney filed a motion for an order to show cause, MACIAS's deposition was rescheduled for December 13, 2016. Defendant MACIAS did not appear for that deposition either.

23. On or about December 15, 2016, Defendant MACIAS informed the Miami Police Department of his resignation effective December 15, 2016.

24. The charges against the Plaintiff were subsequently dismissed by the Miami Dade State Attorney on or about January 9, 2017.

**Deliberate Indifference by the Miami Police Department.**

25. The Defendant CITY OF MIAMI has a long history of failing to properly screen its police candidates as well as failing to properly train and/or supervise police candidates after they have been hired by the City of Miami Police Department as police officers.

26. At all times material hereto there existed a de facto policy within CITY OF MIAMI of covering up police misconduct by failing to properly investigate alleged misconduct and/or conducting investigations that were intentionally deficient and/or fabricating evidence to justify the misconduct.

27. At all times material the Defendant CITY OF MIAMI was on notice of a pattern and/or practice of misconduct, corruption and cover up evidenced but not limited to the following:

(a) In 1981 the Booz, Allen & Hamilton Report found that despite prior studies and two consent decrees, the City of Miami Police Department continued to be deficient in the training and supervision of its police officers, particularly with respect to road patrol and criminal investigations units.

5

(b)     The continued lack of training and supervision with respect to the City of Miami Police Department were reiterated in the updated Booz, Allen & Hamilton report of April 1983.

(c)     In the 1980's Defendant CITY OF MIAMI hired 600 new officers, some with criminal backgrounds as well as those who were found to be mentally unfit, and who following their hire, were not properly trained and/or supervised resulting in a series of criminal and corrupt activities, known as the Miami River Cops incident, involving nearly 100 police officers who were arrested, convicted, and/or disciplined for engaging in criminal activities.

(d)     There existed a pattern and practice of engaging in false arrests and imprisonment, false prosecutions, and excessive use of force.

(e)     On or about July 18, 1993, Nathaniel Veal, Jr., Andy Watson, Pablo Camacho, Charles Haynes Jr., Ronald Sinclair and Thomas Trujillo, all former members of the City of Miami Street Narcotics Unit (S.N.U.), were convicted of providing false and misleading information to investigators in violation of 18 U.S.C. 1512(b)(3). These convictions were affirmed by the Eleventh Circuit Court of Appeals in U.S. v. Veal, 153 F.2d 1233 (11th Cir. 1998).

(f)     In 2002 the U.S. Department of Justice Civil Rights Division investigated the City of Miami Police Department.   The investigation disclosed that the Department failed to appropriately train its officers in the use of force and that it failed to properly report, document, or investigate complaints of misconduct by its officers.

28.     Despite the notice and knowledge by Defendant CITY OF MIAMI of the failures of the Department in its hiring, training, and supervision practices, the Defendant CITY OF MIAMI failed to institute any meaningful changes thereby allowing for the improper training and/or supervision of officers such as Defendant MACIAS, after Defendant City hired MACIAS

6

on or about October of 1988.   The past pattern and practice of the conduct described above continued with incidents arising from Defendant MACIAS's own unlawful conduct as well as the unlawful conduct of other Miami Police officers.

29.    Within one year of the date MACIAS was hired by the Miami Police Department, MACIAS was the subject of three (3) use of force incidents and five (5) citizen complaints.

30.    In one incident MACIAS took a soda from the hand of a person arrested for disorderly conduct and poured it over his head.   This misconduct investigation was substantiated by internal affairs.

31.    Another incident caused the Miami Policed Department to relieve MACIAS of duty on August 5, 1989, pending an administrative/criminal investigation.   The investigation lasted approximately one year during which time MACIAS remained on relieved-of-duty status. It was eventually determined that MACIAS wrote facts in an affidavit for two citations even though he had no personal knowledge.   He was ultimately given an 80-hour suspension.

32.    After he was allowed to resume his position as a police officer in October of 1990, MACIAS continued to receive use of force incidents and citizen complaints as follows:

- 1991 - one use of force incident, [MACIAS was on a two-year leave of absence for military duty from 1992 through 1993];
- 1994 - one use of force incident and eight citizen complaints;
- 1995 - two use of force incidents and one citizen complaint;
- 1996 - two use of force incidents and one citizen complaint;
- 1997 - one citizen complaint;
- 1998 - two use of force incidents and one citizen complaint;
- 1999 - two use of force incidents and three citizen complaints.

7

33.     Despite the Miami Police Department's own written procedures that two or more citizen complaint incidents and/or two or more use of force incidents during a 12-month period required a mandatory review of the officer, this did not take place. His record as a police officer showed early signs of aggressive and violent tendencies and the need for additional training and/or supervision, but no such action was taken. As a result of the lack of additional training and/or supervision, MACIAS's performance as a police officer continued to deteriorate.

34.     On or about March 12, 1996, Defendant MACIAS and Miami police officers Jose Acuna, Ralph Fuentes, Arturo Beguiristain, and Eliezer Lopez were part of a Special Weapons and Tactics (S.W.A.T.) team that served a search warrant at an apartment located in Miami, Florida. In the course of serving the search warrant at the apartment, the Defendant along with the other four officers fired approximately 123 shots at Richard Brown, a resident of the apartment, resulting in his death.

35.     On August 1, 1997, the estate of Richard Brown filed a lawsuit against Defendant MACIAS and six other Miami Police Officers pursuant to 42 U.S.C. §1983 for the violation of the Richard Brown's U.S. Constitutional right to be free from the use of excessive force, which resulted in his death. (*Brown v. City of Miami*, 97-2415-civ-Graham.) The lawsuit also named the Defendant CITY OF MIAMI alleging that the violation of Brown's Constitutional rights by the officers was directly caused by the acts, omissions, policies or customs of the Defendant CITY OF MIAMI.

36.     On or about January 13, 2000, the Miami City Commission approved a settlement of the Richard Brown lawsuit against the Defendant CITY OF MIAMI, the Defendant MACIAS, and the other Miami police officers named in the lawsuit.

8

37. On or about March 23, 1999, Defendant Macias along with other officers from the Defendant City of Miami's Police Department were dispatched to the home of Jesse Runnels concerning a possible suicide attempt by Jesse Runnels, who was alone inside his house. City of Miami Police officers were on the scene. After Defendant MACIAS was on the scene for approximately 73 minutes, he fired two bullets from a MP-5 assault rifle through the kitchen window killing Runnels.

38. On or about August 11, 2000, the estate of Jesse Runnels filed a lawsuit pursuant to 42 U.S.C. §1983 against Defendant MACIAS in his capacity as a Miami policer officer for the deprivation of Runnel's U.S. Constitutional rights. (*Runnels v City of Miami*, 00-2930-civ-King). The lawsuit also charged the Defendant CITY OF MIAMI with failing to train, supervise, and/or discipline its officers for the illegal use of force. It alleged that the violation of Runnel's constitutional rights by Defendant MACIAS was a direct result of the acts, omissions, policies or customs of the Defendant CITY OF MIAMI.

39. On March 14, 2001, a federal grand jury in Miami returned a two-count indictment ("Brown Indictment") against the Defendant MACIAS and four other officers of the Miami Police department for violating 18 U.S.C. §§1512 and 242. The indictment charged MACIAS and the other officers with conspiracy to fabricate evidence that would justify the deadly force used on Richard Brown, and to testify falsely, and/or corroborate other officers' false statements, in relation to any investigation into the shooting of Richard Brown. The Brown Indictment specifically alleged that Defendant MACIAS gave false and misleading sworn statements to law enforcement officials investigating the shooting of Richard Brown.

40. On March 16, 2001, Defendant was relieved of duty by the Miami Police Department as a result of the then pending federal criminal investigation.

9

41.     On September 10, 2001, the federal grand jury returned a superseding indictment in the Richard Brown case adding six additional officers to the charge of conspiracy to obstruct justice. Of those officers Oscar Ronda, Jesus Aguero, Arturo Beguiristain and Jorge Castello were convicted of conspiracy to obstruct justice in violation of 18 U.S.C. §§1512(b)(3) and 371 and obstruction of justice in violation of 18 U.S.C. §1512(b)(3).

42.     On or about February 14, 2002, the City Commission for the Defendant CITY approved a settlement in the Runnels lawsuit against the Defendant CITY OF MIAMI, and Defendant MACIAS.

43.     On or about March 4, 2002, a federal grand jury in Miami returned a two-count indictment charging Defendant MACIAS with a violation of 18 U.S.C. §1512(b)(3) in connection with the Jesse Runnels shooting ("Runnels indictment"). The indictment specifically charged that Defendant MACIAS knowingly made false statements to law enforcement officers who were investigating the shooting.

44.     A federal jury acquitted MACIAS of the criminal charges in the Brown indictment and another jury acquitted MACIAS of the criminal charges in the Runnels indictment. On or about June 2, 2004, the Defendant MACIAS returned to the position of police officer, and sometime in 2005 or 2006 he was assigned to the Miami Police Marine Patrol.

45.     When the Defendant CITY OF MIAMI allowed MACIAS to return to the position of police officer, the CITY was on notice the Defendant MACIAS had been charged by two federal grand juries with providing false statements under oath to law enforcement officers conducting investigations into the shooting of two civilians. One shooting was committed by Defendant MACIAS himself (Runnels), and one shooting was committed by MACIAS and other officers (Brown).

46.     Two Federal grand jury indictments together with MACIAS's past suspension for providing information in an affidavit about which he did not have personal knowledge gave the Defendant CITY OF MIAMI ample evidence and notice that MACIAS had a tendency to provide false statements under oath regarding his official activities as a law enforcement officer.

47.     The Defendant CITY OF MIAMI was also on notice that MACIAS had been sued twice for federal constitutional violations and state law violations in connection with the Runnels shooting and the Brown shooting resulting in multi-million-dollar settlements with the families of Runnels and Brown.   The CITY OF MIAMI was on notice that overwhelming evidence demonstrated MACIA'S aggressive and violent tendencies.

48.     The Defendant CITY OF MIAMI failed to require MACIAS to undertake any training, supervision, discipline for the incidents or conduct that resulted in the shooting of Richard Brown and Jesse Runnels and/or for the conduct that resulted in two federal grand juries charging MACIAS with providing false information to law enforcement investigators and/or for the unconstitutional violations that resulted in the filing and settlement of two civil suits, both of which named Defendant MACIAS.

49.     Defendant CITY OF MIAMI had a duty to train supervise control or otherwise ensure that Defendant MACIAS and other unnamed police officers did not violate the constitutional rights of persons such as the Plaintiff.

50.     After he was allowed to return to his job as a police officer following two indictments for providing false statements and two civil rights lawsuits for use of force, without having any repercussions, MACIAS knew he could commit illegal use of force, violate constitutional rights of citizens, and lie with impunity as he had done multiple times in the past without losing his position with the police department.

11

51.     Defendant CITY OF MIAMI's failure to properly train and/or supervise and/or discipline officers of the Miami Police Department, including Defendant MACIAS, was a proximate cause of the deprivation of the Plaintiff's constitutional rights.

52.     Despite the ample evidence demonstrating that Defendant MACIAS was unfit to be a law enforcement officer, that his temperament was unsuitable for his continued retention as a law enforcement officer, that he had a tendency to provide false information regarding official activities, and that he had violated the constitutional rights of citizens, the Miami Police Department allowed Defendant MACIAS to resume his position as a Miami police officer thereby making the incident involving the Plaintiff foreseeable.

53.     The above acts and omissions by the Defendant CITY OF MIAMI, constitute a course of conduct and failure to act amounting to a deliberate indifference to the rights, health, safety and welfare of the Plaintiff resulting in the deprivation of the Plaintiff's constitutional rights.

54.     As a direct and proximate result of the acts of the Defendant CITY OF MIAMI and/or Defendant MACIAS, including a violation of the Plaintiff's constitutional rights under the Fourth, Fifth, Sixth and Fourteenth amendments to the United States constitution, Plaintiff BRUCE POWERS suffered injuries and damages:

## CAUSES OF ACTION

## COUNT ONE

### (State Claim of Assault and Battery by Defendant MACIAS)

55.     Plaintiff POWERS re-alleges and adopts paragraphs 1 through 54.

12

56.     This is a cause of action for damages in excess of fifteen thousand dollars, exclusive of costs and attorney's fees.

57.     The above-mentioned acts constitute an unlawful assault and battery by Defendant MACIAS on the Plaintiff. Defendant MACIAS acted willfully, brutally, maliciously, and without justification.

58.     Such unlawful contact occurred without the consent and against the will of Plaintiff POWERS.

59.     Pursuant to 768.28, Florida Statutes, Plaintiff notified Defendant CITY OF MIAMI of this claim prior to filing this action and said claim was not resolved.

60.     As a direct and proximate result of the said battery by Defendant Miami Police Officer MACIAS, Plaintiff BRUCE POWERS suffered and continues to suffer physical injury, great pain of mind and body, emotional distress, embarrassment, mental anguish, cost of bond and attorney fees, loss of capacity for the enjoyment of life, humiliation, and damage to his reputation.

WHEREFORE, PLAINTIFF prays that this Court grant the following relief:

a.     Judgment for compensatory damages against Defendant MACIAS for compensatory damages in excess of fifteen thousand dollars ($15,000) dollars;

b.     Costs of suit;

c.     Trial by jury as to all issues so triable; and

d.     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT TWO

**(State Claim against Defendant MACIAS for Malicious Prosecution)**

13

61.     PLAINTIFF realleges and adopts the allegations of paragraphs 1 through 54.

62.     On or about April 21, 2016, and thereafter, Defendant MACIAS, proximately caused criminal proceedings to be instituted or continued against Plaintiff POWERS with malice and in the absence of probable cause that Plaintiff POWERS had committed any criminal offense by causing documents to be submitted to the State Attorney and making statements to the State Attorney, the prosecuting authority, containing false information and material omissions.

63.     At all times material hereto, Defendant MACIAS knew his documents and statements, sworn and unsworn, would be submitted to the State Attorney and would be relied upon by the State Attorney for the institution and continuation of criminal proceedings against Plaintiff.

64.     Subsequently, the State Attorney proceeded against Plaintiff for the charges for which he had been arrested pursuant to the documents provided by Defendant MACIAS.

65.     The criminal proceedings against Plaintiff POWERS were completely terminated by the dismissal of the charges by the State Attorney.

66.     No reasonably cautious person in the position of Defendant MACIAS, would have believed Plaintiff was in fact guilty of any criminal offense.

67.     With regard to this count, the prosecution was initiated with the presence of malice, fraud, reckless disregard for the truth, deliberate violence or oppression or with such gross negligence as to indicate wanton disregard for the rights of Plaintiff, to wit: Defendant MACIAS knew no probable cause existed for the initiation of prosecution of Plaintiff.

68.     As a further direct and proximate result of the said conduct by Defendant MACIAS, Plaintiff POWERS has suffered and continues to suffer physical injury, great pain of

mind and body, emotional distress, embarrassment, mental anguish, cost of bond and attorney fees, loss of capacity for the enjoyment of life, humiliation, and damage to his reputation.

WHEREFORE, PLAINTIFF prays that this Court grant the following relief:

a.      Judgment for compensatory damages against Defendant MACIAS for compensatory damages in excess of fifteen thousand dollars ($15,000) dollars;

b.      Costs of suit;

c.      Trial by jury as to all issues so triable; and

d.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT THREE

### (42 U.S.C. §1983 Claim against Defendant MACIAS)

69.     PLAINTIFF realleges and adopts the allegations of paragraphs 1 through 54.

70.     While Defendant MACIAS was acting under color of state law as a police officer for the Defendant CITY OF MIAMI, Defendant MACIAS subjected Plaintiff POWERS to the deprivation of the rights and privileges secured to him by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States. The actions and conduct of the Defendant MACIAS violated the rights of the Plaintiff to substantive due process of law under the Fifth Amendment, to a fair trial under the Sixth Amendment, and to be free from unreasonable detention, search and seizure under the Fourth Amendment.

71.     The actions and conduct of Defendant MACIAS caused Plaintiff POWERS great bodily harm and caused the Plaintiff to be illegally seized, restrained, detained, imprisoned and criminally prosecuted in violation of his constitutional rights under the under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution by arresting and detaining the

15

Plaintiff, subjecting him to an illegal and unreasonable search and seizure of his person, and depriving the Plaintiff of his liberty.

72.     Defendant MACIAS caused criminal proceedings to be instituted and/or continued against Plaintiff POWERS when Defendant MACIAS knew or should have known said prosecution was without probable cause.  The matters known to Defendant MACIAS prior to and at the time he continued the prosecution would not have warranted a reasonable law enforcement offer to believe the Plaintiff had committed the alleged crime.  The prosecution was instigated and continued as a result of Defendant MACIAS's intentional acts of providing false information, false sworn affidavits, false reports and false evidence to the criminal courts, the prosecutors, and the public, thereby knowingly or recklessly disregarding the Plaintiff's substantive due process rights.

73.     As a further direct and proximate cause of Defendant MACIAS's above-mentioned conduct, Plaintiff POWERS suffered and continues to suffer physical injury, great pain of mind and body, emotional distress, embarrassment, mental anguish, cost of bond and attorney fees, loss of capacity for the enjoyment of life, humiliation, and damage to his reputation.

74.     42 U.S.C. §1983 provides a remedy for a violation of these constitutional rights.

WHEREFORE, PLAINTIFF prays that this Court grant the following relief:

a.     Judgment for compensatory damages against Defendant MACIAS in excess of $ 15,000 dollars;

b.     Cost of suit;

c.     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d.     Trial by jury as to issues so triable; and

16

     e.     Such other relief as this Honorable Court may deem just and appropriate.

**COUNT FOUR**

**(State Claim against Defendant CITY OF MIAMI for battery)**

75.     The Plaintiff realleges and adopts the allegation of paragraphs 1 through 54.

76.     All times material hereto, Defendant CITY OF MIAMI acted by and through its agents, employees, and/or police officers.

77.     On or about April 21, 2016, Defendant MACIAS did knowingly and intentionally inflict injury upon Plaintiff POWERS by force directed to Plaintiff POWERS and inflicted a reasonable fear of imminent peril upon POWERS.

78.     As a further direct and proximate cause of Defendant MACIAS's above-mentioned conduct, Plaintiff POWERS suffered and continues to suffer physical injury, great pain of mind and body, emotional distress, embarrassment, mental anguish, cost of bond and attorney fees, loss of capacity for the enjoyment of life, humiliation, and damage to his reputation.

WHEREFORE, PLAINTIFF prays that this Court grant the following relief:

     a.     Judgment for compensatory damages against Defendant MACIAS in excess of $ 15,000 dollars;

     b.     Cost of suit;

     c.     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

     d.     Trial by jury as to issues so triable; and

     e.     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT FIVE

**(State Claim against Defendant CITY OF MIAMI for Negligent Hiring and/or Retention and/or Supervision.)**

79.     Plaintiff realleges and adopts the allegations of paragraphs 1 through 54.

80.     At all times material hereto, Defendant CITY OF MIAMI acted by and through its agents, employees, and/or police officers.

81.     At all times material hereto, individuals employed by the Defendant CITY OF MIAMI acted within the scope of their employment with the Defendant CITY OF MIAMI.

82.     Defendant CITY OF MIAMI has a common law duty to protect others from the result of negligent hiring, supervision and/or retention of its police officers whose negligent or intentional acts due to their position as police officers can foreseeably cause injuries to third parties.

83.     Defendant CITY OF MIAMI knew or should have known that Defendant MACIAS was unfit to be hired and/or retained as a police officer. It was unreasonable for Defendant CITY OF MIAMI to fail to conduct adequate supervision and/or training of Defendant MACIAS.

84.     Despite two federal grand jury indictments charging Defendant MACIAS with making false statements under oath to other law enforcement officials investigating his role in civilian shootings, and despite the two civil lawsuits against Defendant MACIAS arising out of two civilian shootings that resulted in settlements in excess of one million dollars, it was unreasonable for the Defendant CITY OF MIAMI to have retained Defendant MACIAS in the position of police officer and/or to retain Defendant MACIAS without additional proper training and/or supervision.

85.     It was foreseeable that Defendant MACIAS would use his position as a police officer to injure a third person.

86.     The Defendant CITY OF MIAMI's placed the Plaintiff POWERS at risk by negligently retaining Defendant MACIAS and/or failing to provide additional proper training and/or supervision.

87.     As a direct and proximate result of the negligence of its agent, employee and/or police officer of the Defendant CITY OF MIAMI, the Plaintiff sustained injuries for which Defendant CITY OF MIAMI is vicariously liable as a matter of law.

88.     As a further direct and proximate result of the Defendant CITY OF MIAMI's negligent hiring and/or supervision and/or retention of Defendant MACIAS, the Plaintiff POWERS has suffered and continues to suffer physical injury, great pain of mind and body, emotional distress, embarrassment, mental anguish, cost of bond and attorney fees, loss of capacity for the enjoyment of life, humiliation, and damage to his reputation.

WHEREFORE, PLAINTIFF prays that this Court grant the following relief:

a.     Judgment for compensatory damages against Defendant CITY OF MIAMI in excess of $15,000 dollars;

b.     Cost of suit;

c.     Trial by jury as to issues so triable; and

d.     Such other relief as this Honorable Court may deem just and appropriate.

### COUNT SIX

**(42 U.S.C. §1983 claim against Defendant CITY OF MIAMI)**

89.     PLAINTIFF realleges and adopts the allegations of paragraphs 1 through 54.

90.     At all material times hereto, Defendant CITY OF MIAMI, through its officers and agents, was charged with the responsibility of hiring, screening, training, supervising, disciplining and controlling officers of the City of Miami Police Department.

91.     At all times material hereto, the Defendant CITY OF MIAMI, through its officers and agents, was deliberately indifferent in that the Miami Police department either expressly or impliedly acknowledged and assented to the failure to train and/or supervise and/or control and/or screen employees of the Miami Police Department including, but not limited to, Defendant MACIAS for dangerous propensities, lack of training, and/or skill or other characteristics making said officers unfit to perform their duties.

92.     At all times material hereto, Defendant CITY OF MIAMI through its officers and agents was deliberately indifferent to the rights of the public, including the Plaintiff, in that it failed to determine whether members of the City of Miami Police Department, including Defendant MACIAS, posed a threat to the public as a result of their propensity to commit unlawful acts.

93.     At all times material hereto, Defendant CITY OF MIAMI, through its deliberate indifference, failed to ensure that the police officers of the City of Miami Police Department did not violate the constitutional and statutory rights of citizens of the State of Florida, including the Plaintiff, while said officers were acting under color of state law for the City of Miami Police Department.

94.     At all times material hereto, Defendant City of Miami permitted and tolerated the above described acts and thereby causing a pattern and practice of officers who committed various criminal acts and who have fabricated evidence and testimony to cover their own misconduct and/or the misconduct of other officers when they or other officers engaged in

20

making false arrests, used excessive and/or deadly force by officers of the City of Miami Police Department against members of the public including the Plaintiff, and committed unjustified, unreasonable and illegal false arrests and/or detentions in violation of their Fourth, Fifth, Sixth, and Fourteenth Amendment rights of the U.S. Constitution.

95.     Though such acts were improper, the police officers involved were not adequately disciplined and/or subjected to retraining. Some of said incidents were in fact covered up with official claims that their acts were justified and proper. As a result, Miami Police Department officers, including Defendant MACIAS, were encouraged to believe that members of the public, including the Plaintiff, could be subjected to illegal arrests, detentions and/or prosecutions, and that said illegal arrests, detentions, and/or prosecutions would be permitted by Defendant CITY OF MIAMI.

96.     The City of Miami Police Department, through its officers, maintained a custom of making unlawful arrests, detentions, and/or prosecutions and covering up misconduct by fabricating evidence and testimony and committing criminal acts. The conduct described above represents a pattern in which citizens were injured or endangered by the intentional and/or reckless misconduct by the officers of the City of Miami Police Department.

97.     The Defendant CITY OF MIAMI, through its officers or agents, has maintained a widespread failure to properly hire and/or train and/or supervise and/or discipline its officers for among other things, unlawful detentions and/or arrests and/or prosecutions, even though they had notice of such unlawful conduct by employees.

98.     The foregoing acts, omissions, policies or customs of Defendant CITY OF MIAMI caused officers, including Defendant MACIAS, to believe that acts such a unlawful seizures and/or detentions, and/or arrests and/or prosecutions, among other things, would not be

21

properly investigated, with the foreseeable result that officers, including Defendant MACIAS, were more likely to make unlawful seizures and/or detentions and/or arrests and/or prosecutions and/or commit criminal acts.

99.     The Plaintiff BRUCE POWERS has been a victim of said abuses of lawful authority, and said illegal acts were the foreseeable result of the previously described acts, omissions, policies or customs of the Defendant CITY OF MIAMI.

100.    As a further direct and proximate result of the Defendant CITY OF MIAMI'S deliberate indifference, Plaintiff POWERS suffered and continues to suffer physical injury, great pain of mind and body, emotional distress, embarrassment, mental anguish, cost of bond and attorney's fees, loss of capacity for the enjoyment of life, humiliation, and damage to his reputation.

101.    42 U.S.C. §1983 provides a remedy for a violation of these constitutional rights.

WHEREFORE, PLAINTIFF prays that this Court grant the following relief:

a)      Judgment against Defendant CITY OF MIAMI for compensatory damages in excess of fifteen thousand dollars ($15,000) dollars;

b)      Costs of suit;

c)      Trial by jury as to all issues so triable;

d)      Such other relief as this Honorable Court may deem just and appropriate.

September 10, 2019

_____
KENNETH SWARTZ
Counsel for PLAINTIFF BRUCE POWERS

SWARTZ LAW FIRM
14 NE 1st Ave Ste. 1211
Miami, FL 33132-2452
Telephone:     (305) 579-9090
ken@swartzlawyer.com

By: /s/ Kenneth Swartz
Florida Bar No. 331929